IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2844 T
(Honorable Bohdan A. Futey)

ROBERT L. HIRX and ROSE LOCASSIO,
aka ROSE HIRX,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS IN PART

FRANK AGOSTINO
Attorney for Plaintiffs
Calo Agostino
A Professional Corporation
14 Washington Place
Hackensack, NJ 07601
(201) 488-5400
(201) 488-5855 (Facsimile)

## TABLE OF CONTENTS

**Page**

Plaintiffs' Memorandum of Law in Opposition to Motion of United States to Dismiss in Part . . . . . . . . . . 1

Introduction . . . . . . . . . . 1

Statement . . . . . . . . . . 2

Argument:

I. The settlement in the Tax Court case contemplated that the IRS would allow Plaintiffs to credit the 1996 overpayment to the 1997 tax liability . . . . . . . . . . 2

II. The Tax Court settlement included the 1996 overpayment and is enforceable in this Court . . . . . . . . . . 6

Conclusion . . . . . . . . . . 7

Appendix A:

Statement of Frank Agostino . . . . . . . . . . A-1

Exhibit 1: Transcript - United States Tax Court, September 22, 2003 . . . A-4

Exhibit 2: Status Reports - United States Tax Court . . . . . . . . . . A-8

## TABLE OF AUTHORITIES

**Cases:**

*Stamm International Corp. v. Commissioner,* 90 T.C. 315, 326 (1988) . . . . . . . . . . . 5,6,7

*Manko v. Commissioner,* T.C. Memo, 1995-10, 1995 WL 39228 (U.S. Tax Ct. 1995). . . 5

No. 03-2844 T
Honorable Bohdan A. Futey

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 03-2844 T
(Honorable Bohdan A. Futey)

ROBERT L. HIRX and ROSE LOCASSIO,
aka ROSE HIRX,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
UNITED STATES' MOTION TO DISMISS IN PART

Plaintiffs Robert L. and Rose Locasio Hirx hereby submit this memorandum of law in opposition to the United States' motion to dismiss "in part."

## INTRODUCTION

Plaintiffs sued in this Court to enforce a settlement (the "Settlement") with the Internal Revenue Service ("IRS) made in the United States Tax Court ("Tax Court"). The Settlement included the years 1996, 1997 and 1998. Only the 1996 year is currently before this Court. In this Court, Plaintiffs ask for an Order fixing the amount of the overpayment and directing the IRS

to credit the 1996 year overpayment (the "Overpayment") generated by the Settlement to the 1997 year income tax created by the Settlement.

Specifically, the Tax Court case involved basis and timing issues as to losses claimed by the Plaintiffs for 1997 and 1998. The Settlement created a net operating loss ("NOL") for 1998. The Settlement, in the Tax Court, created the Overpayment for 1996. The existence and amount of the 1996 Overpayment is no longer in dispute. As a result of the Settlement, as far as the Tax Court is concerned, the 1998 year is closed. The 1997 tax year is currently open in Tax Court pending the outcome of this case.

## STATEMENT

The existence and amount of the overpayment due Plaintiffs is not in dispute. The parties agree that the case is ripe for summary judgment.[1] The only issue in dispute is whether the settlement agreement requires the IRS to credit the 1996 year Overpayment created by the Settlement, to the 1997 year income tax created by the Settlement. Plaintiffs contend that the Tax Court settlement of the 1996, 1997 and 1998 tax case binds the United States in this case.

## ARGUMENT

### I. The settlement in the Tax Court case contemplated that the IRS would allow Plaintiffs to credit the 1996 overpayment to the 1997 tax liability.

The IRS sent Plaintiffs a notice of deficiency for 1997 and 1998 disallowing the losses claimed on Plaintiffs' 1997 and 1998 income tax returns relative to Westbrook Farms, Plaintiffs' wholly-owned S-corporation. In response, Plaintiffs filed a Tax Court petition.

---

[1]Although Plaintiffs have not moved for summary judgment, they anticipate that the Court's decision on the government's motion will resolve all of the issues in this Court.

Plaintiffs and the IRS settled the Tax Court case by agreeing that Plaintiffs would take and the IRS would allow the Westbrook Farms related losses in 1998. Since the IRS allowed all of the Westbrook Farm losses, the Settlement was simply a timing issue (i.e., the real issue in dispute was the calculation of interest). Stated another way, the parties understood that the Settlement created a large net operating loss ("NOL"). The IRS agreed to allow Plaintiffs to carryback the NOL to 1996.[2] The only issue still in dispute in the Tax Court is the computation of the tax due and owing for 1997 and the impact of the interest netting rules. The 1997 tax and interest computation depends on the resolution of this case.

Specifically, the 1998 NOL carryback created by the Settlement also created the 1996 Overpayment; the existence and amount of the overpayment due Plaintiffs is not in dispute.

The issue for this Court is whether the settlement agreement requires the IRS to credit the 1996 year overpayment created by the Settlement to the 1997 year income tax created by the Settlement. Stated another way, the issue is: Does the Settlement estop the IRS from doing anything with the Overpayment except crediting it to the 1997 tax? The resolution of this issue depends solely on the Court's interpretation of the Settlement announced in the Tax Court.

The settlement colloquy was so short that Plaintiffs have reproduced it in its entirety below:

> MR. BOYLAN: Your Honor, we have reached a basis of settlement in this case. If we can we'd like to read it into the record.

Statement of F. Agostino, Exhibit 1, page 2, lines 23-25.

---

[2]Plaintiffs filed an amended 1040 for year 1996 reflecting the net operating loss from 1998. The resulting overpayment from 1996 is the subject of this case. The government admitted in its answer that Plaintiffs are entitled to the Overpayment.

THE COURT: Yes. Go ahead.

MR. BOYLAN: For the taxable year 1997, Petitioners had no basis to claim the flow through loss from the 1120 S corporation, Westbrook Farms. The loss is disallowed in full. Petitioners are subject to the I.R.C. § 6651 addition to tax for the taxable year 1997.

For the taxable year 1998, Petitioners have a $515,817 basis in their investment in the S corporation, Westbrook Farms, Incorporated. Of the flowthrough loss of $2,554, $724 [*SIC*] is allowed in 1998. There are no penalties or additions to tax in 1998. The parties request 30 days to finalize the processing of this settlement and file the decision documents report.

MR. AGOSTINO: Right. And one of the technical issues on why it's going to take a while for the decision documents. ***As you said, we just created a huge NOL in 1998. That NOL needs to be carried back to 1996. We've made the claim, and then we're electing to take the refund claim from 1996 and apply it toward the 1997 tax. So we're going to ask for I think 60 days for those documents***.

Statement of F. Agostino, Exhibit 1, page 3, lines 1-25 (emphasis added).

Plaintiffs respectfully submit that this passage proves that the IRS understood, and by its silence acquiesced to, Plaintiffs' election to apply the 1996 Overpayment created by the Settlement to the 1997 tax liability created by the Settlement. Stated another way, the Settlement estops the IRS from paying the 1996 refund directly to Plaintiffs or doing anything else with the Overpayment. Stated simply, Plaintiffs respectfully submit that if the IRS or its counsel had any objections to crediting the 1996 overpayment generated by the Settlement to the 1997 tax liability created by the Settlement, they could and should have been addressed with the Court at that time.[3] The IRS did not object (Statement of Frank Agostino, Exhibit 1, page 3, line

---

[3]Plaintiffs note here that absent the need to calculate the 1996 overpayment, there was no reason to delay the entry of the Tax Court decision documents. The government's request for more time to enter a decision for 1997 permits the Court to infer that the IRS intended to credit the 1996 overpayment to the 1997 tax before calculating the tax due and owing for 1997.

24 and line 25) and, therefore, applying: (a) general contract principles, and (b) the related principles of equitable estoppel, the settlement is binding on the IRS. *Stamm International Corp. v. Commissioner of Internal Revenue*, 90 T.C. 315, 326 (1988).

Unlike administrative IRS settlements, general contract law governs Tax Court settlements. In *Manko v. Commissioner*, T.C. Memo. 1995-10, 1995 WL 39228 (U.S. Tax Ct. 1995) the Tax Court explained that:

> A settlement is a contract and, consequently, general principles of contract law determine whether a settlement has been reached. *Robbins Tire & Rubber Co. v. Commissioner*, 52 T.C. 420, 435-436, supplemented by 53 T.C. 275 (1969). A prerequisite to the formation of a contract is an objective manifestation of mutual assent to its essential terms. *Heil v. Commissioner*, T.C. Memo. 1994-417; 17A Am. Jur. 2d, Contracts, secs. 27 and 28 (1991); 1 Williston on Contracts, sec. 3:5 (4th ed. 1990). Mutual assent generally requires an offer and an acceptance. 17A Am. Jur. 2d, Contracts, sec. 41 (1991). "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." 1 Restatement, Contracts 2d, sec. 24 (1981).
>
> In a tax case, it "is not necessary that the parties execute a closing agreement under section 7121 in order to settle a case pending before this Court, but, rather, a settlement agreement may be reached through offer and acceptance made by letter, or even in the absence of a writing." *Lamborn v. Commissioner*, T.C. Memo. 1994-515. Settlement offers made and accepted by letters are enforced as binding agreements. *Haiduk v. Commissioner*, T.C. Memo. 1990-506; see also *Himmelwright v. Commissioner*, T.C. Memo. 1988-114.

Applying contract principles to the Settlement compels the following conclusions:

1. Plaintiffs understood the Settlement to include the government's agreement to credit the 1996 overpayment to the 1997 tax.

2. The Government understood that the 1996 overpayment reduced the 1997 tax (i.e., the need for more time to file decision documents).

3. The IRS acquiesced to Plaintiffs' request to credit the 1996 overpayment to the 1997 tax.

Stated another way, there was no reason to delay the entry of decision in the 1997 tax case absent the need to calculate the Overpayment, process the 1996 Claim and credit the 1997 tax. The Settlement included the government's agreement to credit the 1996 overpayment to the 1997 tax.

II. <u>The Tax Court settlement included the 1996 overpayment and is enforceable in this Court.</u>

As explained above, the Tax Court settlement encompassed the years 1996, 1997 and 1998 despite the parties' acknowledgment that the Tax Court did not, at that time, have jurisdiction to order the overpayment from 1996 credited to 1997.[4] Consequently, the parties and the Tax Court deferred entry of decision on the 1997 tax year. Stated another way, the Tax Court kept the 1997 tax case open until this Court could determine the amount of the 1996 overpayment and credit it against the 1997 tax. The status reports filed in both this Court and the Tax Court confirm that the parties and the Tax Court recognized that this Court has exclusive jurisdiction over any overpayment issued relative to the 1996 tax year.

The Tax Court's lack of jurisdiction relative to the 1996 overpayment did not, however, prevent the Plaintiffs and the IRS from entering into a settlement that affected 1996 overpayment and 1997 deficiencies. *Stamm. v. Commissioner*, 90 T.C. at 318 .

---

[4]Although neither of the parties has briefed the issue, since the Tax Court has jurisdiction to redetermine the 1997 tax, it may ultimately be the Tax Court and not this Court that ultimately decides the tax consequences of the 1996 credit on the 1997 tax.

In *Stamm*, the Tax Court made clear that a Tax Court settlement agreement may include references and binding provisions concerning nondocketed years. Id. Plaintiffs respectfully submit that, if the Court concludes that the Tax Court Settlement requires the IRS to credit the 1996 Overpayment to the 1997 year income tax, then the Settlement is enforceable against the government in this Court.

## CONCLUSION

Wherefore, Plaintiffs pray that the Court: (a) deny Defendant's motion, (b) fix the amount of the 1996 overpayment, and (c) direct the IRS to credit the 1996 overpayment to Plaintiffs' 1997 tax.

Respectfully submitted,

s/Frank Agostino

FRANK AGOSTINO
Attorney of Record for Plaintiffs
Calo Agostino, A Professional Corporation
14 Washington Place
Hackensack, NJ 07601
(201) 488-5400, Ext. 107

Date: August 14, 2006